## O'NEAL v. LAWTON.
### No. 5952.

Court of Appeal of Louisiana. Second Circuit.

Feb. 7, 1940.

Rehearing Denied March 6, 1940.

Herold, Cousin & Herold and Simon Herold, all of Shreveport, for appellant.

Ruvian D. Hendrick, of Shreveport, for appellee.

DREW, Judge.

In this case the lower court has written two opinions, one at the conclusion of the trial below and the other on application for rehearing. In these two opinions the lower court has correctly stated all the testimony in the case. They are as follows:

"Plaintiff, B. F. O'Neal, brings this suit against the defendant, J. W. Lawton, to recover an amount alleged to be due as commissions under a contract of employment to sell real estate belonging to the defendant. In answer, defendant denies the contract of employment and, in the alternative, avers that if a commission is due, it should be based on the sum of $17,500.00, the sale price of the property which the plaintiff alleges he was employed to sell.

"Due to the warbled condition of the evidence on the material points in the case, it is rather hard to arrive at the true facts in the case.

"The question to be decided in the first instance is whether the plaintiff was employed by defendant to sell the property at 530 Linden Street, and, if so, did plaintiff, acting under that employment, find or secure the purchaser to whom the property was sold? If these questions are answered in the affirmative, then it matters not who made the sale, as we understand the law relating to real estate brokers to be that when a contract of employment is established and the agent procures a purchaser and introduces him to the owner, and a sale is thereafter made to such purchaser, even though it is made by the owner, that the agent will be entitled to his commission. However, this statement of the law is predicated upon a contract of employment by the owner of the agent, otherwise, such agent is relegated to a suit on a quantum meruit.

"The relationship between plaintiff and defendant and their discussions, originally, was not that of principal and agent, as affecting 530 Linden Street. The facts in the case seem to be that defendant was the owner of the premises at 510 Linden Street, where he resided, and was erecting at 530 Linden, for himself and family, a new residence and was therefore interested in selling the property at 510 Linden. Whether plaintiff was employed to sell the latter property for defendant is uncertain, as he states that it was listed with him and at the same time he says that defendant had granted the exclusive sale thereof to Mr. O'Neal.

"It appears that Mrs. O. K. Allen (who became the purchaser of the property at 530 Linden Street) was in the market for a home and was attempting to locate a suitable place through plaintiff's efforts, this being prior to any negotiations affecting 530 Linden Street. Miss Margaret Anderson, Mrs. Allen's nurse, a witness for plaintiff, stated in part as follows: 'Yes, Mr. O'Neal called on Mrs. Allen a great many times. Mrs. Allen had me call Mr. O'Neal and tell him she was in the market for a house and would he please find her something. A few days later, Mr. O'Neal came in his car and took Mrs. Allen and myself to where Mr. Lawton lives and showed us that place. * * *'

"This witness stated further that it was at this time that Mrs. Allen met Mr. Lawton and at which time Mrs. Allen stated that she might go by the new house and see if she liked it. She further testified that Mrs. Allen later asked Mr. O'Neal to secure from Mr. Lawton the blue prints on the new house, which plaintiff secured and

at which time defendant went with plaintiff to the residence of Mrs. Allen to show the blue prints.

"It appears from the testimony of the plaintiff that after Mrs. Allen had examined the blue prints, she asked plaintiff to ascertain from defendant if he would consider selling the property at 530 Linden Street and plaintiff then made an appointment with defendant and 'I told him that I thought I could sell Mrs. Allen the house he was then constructing if he would agree to sell it.' It is certain that up to this point plaintiff had not been employed by defendant to sell the property and it is equally clear that Mr. O'Neal was representing Mrs. Allen. Plaintiff further testifies that he advised Mr. Lawton that Mrs. Allen was looking for a place and would pay around $20,000.00 for a home, as he was showing her houses in that price range. Plaintiff testifies that defendant called in his wife and asked her about selling the property and she said 'if you can get $20,000.00 for it, to sell it'. That defendant agreed then he would sell the property for $20,000.00. This discussion is between Mr. O'Neal, as the agent of Mrs. Allen, and Mr. Lawton, the owner of the property. Plaintiff testifies further along that about three days later defendant came to his office and advised him that Mrs. Allen was under the impression that she would have to pay plaintiff's commission of $1000.00 and asked plaintiff to step out of the picture and let defendant turn the deal and lead Mrs. Allen to believe that no commission would have to be paid and he, defendant, would pay the commission, which plaintiff agreed to and stepped out of the picture. This, in our opinion, clearly shows that up to the time that plaintiff was asked to step out of the picture, he was acting for Mrs. Allen and, of course, was not entitled to a commission from defendant, unless defendant is bound under the agreement made in plaintiff's office, as just referred to.

"Defendant, on the other hand, denies that he employed plaintiff to sell the property at 530 Linden Street; that at the time he told Mr. O'Neal in the office to quit bothering Mrs. Allen (who was very ill), as she might think that he, defendant, was getting him to try to sell her the property; that at the time he had not yet decided to sell the property. He denies that he promised to pay plaintiff any commission; and denies that plaintiff had anything to do with the sale. To this is added the testimony of Mr. R. P. Johnson, an attorney handling the O. K. Allen Estate and attorney for Mrs. Allen, who testified that Mrs. Allen was interested in the house, as she had seen the plans, but would not purchase without a change in them; that several discussions took place between him and Mr. Lawton and that the matter went on until about the latter part of November, when Mr. Lawton agreed to changes in the plans and agreed to sell the property for $17,-500.00, whereupon this witness paid over $10,000.00 on the purchase price and paid the balance of $7500.00 on the date of sale, February 3, 1938. This witness further testifies that he had discussed the matter with Mr. Lawton and Mrs. Allen long prior to any discussion between plaintiff and defendant, as detailed in the beginning hereof, and, before O'Neal secured the plan from defendant, for he testifies that he had been over the house as it was being constructed, and made pencil sketches so that Mrs. Allen could see them and, as stated, this was before the plans were furnished by Lawton at the request of O'Neal.

"Just what are the true facts in this case is very hard to say, but we think it is quite clear that defendant never employed plaintiff to sell the premises at 530 Linden Street; that up to the time of the meeting in plaintiff's office, plaintiff was the representative of Mrs. Allen and not the agent of defendant. If defendant agreed with plaintiff on this occasion to pay him the commission on the sale if he would step out of the picture, then defendant would be liable. In considering this point, we have only the testimony of the plaintiff against that of the defendant. Plaintiff avers and defendant denies. Under the law of evidence, plaintiff is required to make out his case by a preponderance of testimony. This has not been done and the failure to do so must result in a judgment for the defendant.

"My opinion is that Mr. Johnson first communicated with Mr. Lawton Mrs. Allen's interest in the property at 530 Linden. He so states. Mr. Lawton says that the first time plaintiff came to see him about the place and told him that Mrs. Allen was interested, he told plaintiff that he knew she was interested; that plaintiff worked on the deal also, but, as stated, plaintiff is suing on a contract to pay a commission and not on a quantum meruit for services rendered.

"Plaintiff, having failed to establish his contract by a preponderance, his demands are rejected.

"Robert J. O'Neal, Judge."

"Plaintiff's brief in support of the application for rehearing states that he is in accord with the facts as found by the Court, but that there are additional circumstances which the court did not consider and which, if taken into consideration, will substantiate plaintiff's version of the matter; and then states that it is so well settled as not to require citation of authority that the court should take judicial notice of the fact that in transactions of this nature, the real estate dealer's commission should be paid by the seller, as he is the one who receives the money. It appears that plaintiff has proceeded on this theory to make recovery in this case, but we do not consider that the statement of counsel is correct and believe that since the argument of the motion, he has reached the same conclusion.

"In the usual case, it is the owner who places his property on the market and when a real estate agent approaches him with a view of getting a contract to sell the property and the owner, by direct or indication that the agent may sell the property, and when the agent acting under authority offers the property for sale and it is sold to a customer produced by the agent, then the owner would be liable to the agent for the commission. However, in the case at bar, defendant's property was not for sale and plaintiff was not representing the owner but was representing Mrs. Allen and, we have not held that Mr. O'Neal did not procure Mrs. Allen as the purchaser of the property, though there is evidence that he did not. But what we held is that he was not the agent of defendant and the proof did not show by a preponderance of the evidence that defendant promised plaintiff the usual commission.

"It is true that Lawton testifies that he knew Mrs. Allen was interested in the property from the beginning, and it is in evidence that Mr. Johnson had furnished pencil sketches of the ground floor to Mrs. Allen,—and this was certainly before Mr. Lawton, at O'Neal's request, showed her the blue prints which, as I understand it, the plans were furnished about three days after the first meeting of Mrs. Allen and Mr. Lawton. If Mrs. Allen had already been furnished the plans by Lawton, there would have been no need of Johnson making the pencil sketch.

"We take it from the evidence that it was quite some time after the initial meeting of Mrs. Allen and Mr. Lawton before Lawton agreed to sell the property, that O'Neal kept the fires burning trying to find a house for Mrs. Allen and trying to get Lawton to sell this house, and Lawton says that he asked O'Neal to drop the matter, as he was afraid that Mrs. Allen might think that he, Lawton, was having this done. On the other hand, O'Neal says that Lawton came and asked him to step out of the picture as Mrs. Allen was under the impression that she would have to pay $1000.00 commission; and that he, Lawton, would go ahead and close the deal 'and let her think she is saving the commission'; 'morally I owe it to you and legally I cannot help but pay you'. O'Neal further states that he met Mr. Lawton several times and on one occasion Lawton said: 'things are coming along fine, she is willing to buy the place and you will be taken care of with a good commission.' All of this is denied by Lawton. It is certain, even according to O'Neal's testimony, that it was not Lawton who had employed him to sell the property and, consequently, due the commission, because if that were true, there would have been no earthly reason for Lawton to request O'Neal to step out of the picture so that Mrs. Allen would think that she was getting the property without having to pay O'Neal a commission.' The most that I can conclude from O'Neal's testimony is that Lawton promised him a good commission, although Lawton denies that statement, but this is insufficient to prove by a preponderance of the testimony that Lawton agreed to pay the usual real estate commission.

"It appears to me that the understanding of the parties, including Mrs. Allen, that Mrs. Allen would owe the commission, and she would, according to O'Neal's version of the matter; and it may be true that Lawton promised to pay O'Neal a good commission, and after O'Neal demanded a full commission from Lawton, the latter paid $341.25, which is a half regular commission on a sale of this size. Judging the actions of the parties, it appears to me that defendant's action and his statements throughout harmonize, that is, that he had promised no commission, did not owe one, and that after O'Neal had de-

manded a commission, under the circumstances, he paid a half commission and thought O'Neal should be satisfied with that. On the other hand, O'Neal, believing that the owner of the property was legally liable for a commission and having received one-half of the commission from the owner of the property, believes that he is legally entitled to collect the other half. As stated herein, his legal conclusion is unfounded in law and he has not proven an agreement on the part of Lawton to pay a commission by a preponderance of the testimony, and hence cannot recover.

"The application for rehearing is denied.
"Robert J. O'Neal, Judge."

Judgment was signed rejecting the plaintiff's demands and he is now prosecuting an appeal from that judgment.

In this court plaintiff relies entirely and only on what transpired in Mr. O'Neal's office at the time Mr. Lawton asked him to drop out of the case. His contention is that at that time Mr. Lawton agreed to pay him a commission. Mr. Lawton denies that he promised him anything. The lower court's deduction as to the subject matter of that conversation is reasonable and all that occurred thereafter, including the payment of approximately one-half of a reasonable commission, corroborates its finding.

We fail to find reversible error in the opinion of the lower court and it is affirmed, with costs.